# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

CREST FURNITURE, INC. and
SIMON KAPLAN,                              1:20-cv-01383-NLH-AMD

               Plaintiffs,        **OPINION**

    v.

ASHLEY HOMESTORES, LTD. and
ASHLEY FURNITURE INDUSTRIES,
INC.,

               Defendants.

---

**APPEARANCES**:

Paul S. Grossman
WEINER LAW GROUP LLP
629 Parsippany Road
Parsippany, New Jersey 07054

Stuart I. Friedman
Andrew A. Wittenstein
Chris Seelinger
FRIEDMAN & WITTENSTEIN
599 Lexington Avenue, 12th Floor
New York, New York 10022

    *On behalf of Plaintiffs*

Jeffrey A. Carr
Jason J. Moreira
PEPPER HAMILTON LLP
301 Carnegie Center, Suite 400
Princeton, New Jersey 08540-5276

Eric L. Yaffe
Frank J. Sciremammano
Michael L. Sturm
LATHROP GPM LLP
600 New Hampshire Ave NW, Suite 700
Washington, DC 20037

    *On behalf of Defendants*

**HILLMAN**, District Judge

In this action lodged by a furniture store franchisee against the franchisors, currently pending is the defendant franchisors' motion to dismiss the complaint.[1]  For the reasons expressed below, the franchisors' motion will be denied.

<u>BACKGROUND</u>

Plaintiff Simon Kaplan, who was 95 years old at the time the complaint was filed, has been chairman of Plaintiff Crest Furniture, Inc. ("Crest") for 49 years.  In 2004, after having purchased furniture from Defendants Ashley HomeStores, LTD. ("Ashley") and Ashley Furniture Industries, Inc. ("AFI") (collectively, "Ashley" or "Defendants") for decades for Crest's Value City stores, Crest and Ashley entered into a Trademark Usage Agreement ("TUA") pursuant to which Crest would operate an Ashely HomeStore in Millville, New Jersey.  By November 2019, Crest and Ashley had entered into eleven TUAs regarding Crest's operation of six HomeStores in New Jersey and five HomeStores in Pennsylvania.  Crest maintains its headquarters at its warehouse, from which the Ashley furniture is stored and distributed, in Dayton, New Jersey.

In October 2019, Plaintiffs claim that Ashley's director of

---

[1] Also pending is Defendants' motion to substitute a corrected version of their certification in support of their motion to dismiss.  (Docket No. 39.)  That motion will be granted.

store development told Kaplan "you're too old" to run Crest and "we want you out."  On November 13, 2019, Ashley sent a letter to Kaplan informing him that Ashley would not renew the TUAs for four of Crest's HomeStores in Pennsylvania.  Those TUAs are set to expire in January and June 2021.  Plaintiffs claim that the loss of these four stores, which had approximately $30 million in annual sales in 2018, would have a devastating effect on Plaintiffs, including the ultimate result of forcing Crest out of business altogether.

Additionally, Plaintiffs claim that even though they have spent millions of dollars at Ashley's urging to upgrade their stores and open new stores, including two in 2019, and they have had an exemplary business relationship with Ashley, Ashley terminated their TUAs as part of a larger plot between Ashley and Plaintiffs' competitors to take over all of Crest's HomeStores.

Plaintiffs have asserted seven claims against Defendants: (1) breach of the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.A. 56:10-1, et seq.; (2) breach of common law franchise rights; (3) equitable estoppel; (4) unfair competition; (5) fraud; (6) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq.; and (7) for a declaratory judgment.

Defendants have moved to dismiss all of Plaintiffs' claims.

3

Defendants argue that the forum selection clauses in the four
TUAs require Plaintiffs to litigate their claims regarding the
termination of those TUAs in Wisconsin state court.  Because
Plaintiffs' federal action cannot be transferred to a state
court, Defendants argue that Plaintiffs' complaint must be
dismissed.

Defendants also argue that even if the forum selection
clause did not apply, Plaintiffs' claims under the NJFPA and
NJLAD cannot be asserted against Defendants because Plaintiffs'
claims arising from the termination of the four TUAs concern
only stores in Pennsylvania and Defendants' alleged actions
directed only to Pennsylvania.  Defendants further argue that
Plaintiffs' remaining claims under the common law fail as a
matter of law or are insufficiently pleaded, including
Plaintiffs' claims against AFI, about which Defendants contend
Plaintiffs have not directly ascribed any alleged violative
conduct.

Plaintiffs' opposition is premised on their contention that
Crest has held a unified multi-state franchise with Ashley that
cannot be parsed out into separate franchises based on
individual TUAs.  Plaintiffs contend that Defendants' argument
regarding the forum selection clause is misplaced because it
improperly presumes at this motion to dismiss stage that Crest's
franchise is not a unified multi-state franchise as it pleads in

4

their complaint.  Plaintiffs argue that as a unified multi-state franchise operated out of New Jersey, New Jersey law is applicable to their claims.  Specifically, Plaintiffs point out that under the NJFPA, forum selection clauses in franchise agreements are presumptively invalid.  With regard to Kaplan's NJLAD claim, which can be asserted by and against individuals or a corporation, Kaplan is afforded the protections of the NJLAD because he and his company reside in New Jersey.  Plaintiffs further argue that the remainder of their New Jersey state law based claims are cognizable and properly pleaded.

## DISCUSSION

### A.   Subject Matter Jurisdiction

Defendants removed Plaintiffs' case from New Jersey Superior Court to this Court, averring that this Court has jurisdiction over this matter based on the diversity of citizenship of the parties and an amount in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332(a).  According to Defendants' notice of removal, Crest is a citizen of New Jersey (its principal place of business and state of incorporation), Kaplan is a citizen of New Jersey, Ashley is a citizen of Wisconsin (its principal place of business and state of incorporation), and AFI is a citizen of Wisconsin (its principal place of business and state of incorporation).

**B.    Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do . . . ."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (alteration in original)
(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,
47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,
40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v.
Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must
take three steps: (1) the court must take note of the elements a
plaintiff must plead to state a claim; (2) the court should

6

identify allegations that, because they are no more than
conclusions, are not entitled to the assumption of truth; and
(3) when there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.  Malleus v.
George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,
quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly.").  "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents

7

attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document."  Pension Benefit Guar. Corp.
v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.
1993).  If any other matters outside the pleadings are presented
to the court, and the court does not exclude those matters, a
Rule 12(b)(6) motion will be treated as a summary judgment
motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

 **C. Analysis**

   1. ***Whether the forum selection clause in the terminated TUAs applies - Plaintiffs' New Jersey Franchise Practices Act claim (Count One)***

 The four TUAs which Ashley has determined not to renew
contain the same forum selection clause that requires any
dispute arising from that TUA to be brought in Wisconsin state
court.  Ashley's non-renewal of four TUAs for stores in
Pennsylvania, and not for stores in New Jersey, is significant
because "forum-selection clauses in contracts subject to the
[New Jersey] Franchise Act . . . are presumptively invalid."
Kubis & Perszyk Associates, Inc. v. Sun Microsystems, Inc., 680

A.2d 618, 626 (N.J. 1996).[2]  Thus, it must be determined whether

---

[2] The New Jersey Supreme Court explained the reasons for its holding:

>        [A]lthough some franchisees entering into contracts subject to the Franchise Act may be sophisticated and substantial economic entities, the Act's legislative history as well as our common experience suggests that the financial resources of most franchisees pale by comparison to the financial strength and profitability of their franchisors.  Because franchisors usually do business in many markets through multiple dealers, franchisors tend to be larger and more sophisticated entities than franchisees.

>        At the contract stage, the franchisor typically submits a standard contract and, depending on the potential value and profitability of the franchise, a franchisee may elect not to test the negotiability of terms of the contract to avoid the risk of antagonizing the franchisor and losing the franchise.  In that setting, a franchisor has little to lose by including a forum-selection clause in its standard agreement.  Although such a clause directly benefits the franchisor by requiring suit to be filed in a geographically convenient state of choice where it can be defended by the franchisor's regular litigation counsel, the indirect benefit to franchisors is to make litigation more costly and cumbersome for economically weaker franchisees that often lack the sophistication and resources to litigate effectively a long distance from home.  Particularly in the context of a claim for wrongful termination, a forum-selection clause, if enforced, deprives the franchisee of the right to seek prompt injunctive relief from a New Jersey court, and requires a franchisee to seek that relief, at greater cost and inconvenience, in the designated forum.  Thus, if unchallenged by the franchisee, a forum-selection clause can materially diminish the rights guaranteed by the Franchise Act because the franchisee must assert those rights in an unfamiliar and distant forum, with out-of-state counsel, and bear the added expense of litigation in the franchisor's designated forum.

Kubis, 680 A.2d at 627.

Plaintiffs' claims regarding the terminated TUAs are effectively
four individual franchises located in Pennsylvania, which are
presumably out of reach of the NJFPA and where forum selection
clauses in franchise agreements may be enforceable,[3] or are part
of a unified multi-state franchise that encompasses all eleven
Crest-operated HomeStores operated out of Crest's New Jersey
headquarters, and afforded the NJFPA's protections, where a
franchisor may not "terminate, cancel or fail to renew a
franchise without good cause."  N.J.S.A. 56:10-5.

To answer this question at this stage of the case, the
Court must look to Plaintiffs' complaint.  In the introductory
paragraph, Plaintiffs aver, "Plaintiffs Crest Furniture, Inc.
("Crest"), [is] a New Jersey corporation having multiple places
of business in New Jersey, including in Turnersville and

---

[3] In a federal diversity case where the parties agree that there
is nothing wrong with a forum selection clause on its face,
federal law governs enforceability, or the "effect to be given a
contractual forum selection clause."  Zydus Worldwide DMCC v.
Teva API Inc., --- F. Supp. 3d --- 2020 WL 2570043, at *5
(D.N.J. 2020) (quoting Jumara v. State Farm Ins. Co., 55 F.3d
873, 877 (3d Cir. 1995) (citing Stewart Organization, Inc. v.
Ricoh Corp., 487 U.S. 22 (1988)).  In contrast, "State, not
federal, law governs the scope of a forum selection clause.
That is so because the intended scope of a clause is not a
procedural issue, but a substantive question 'of contract
interpretation.'"  Id. (quoting In re McGraw-Hill Global Educ.
Holdings LLC, 909 F.3d 48, 58 (3d Cir. 2018) (quoting John Wyeth
& Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1073 (3d
Cir. 1997)).  The Court does not need to determine at this time
whether the forum selection clause is enforceable if the NJFPA
does not apply to Plaintiffs' claims.

Deptford, Gloucester County, as well as headquarters in Dayton,

New Jersey, and Simon Kaplan, [is] a resident of New Jersey . .

. .″  (Docket No. 1-1 at 3.)

In a section titled,  "The Unified Multi-State Nature of

the Parties' Franchise Agreement," Plaintiffs allege the

following:

> 37.  Although six of Crest's eleven Ashley HomeStores
> are in New Jersey and five are in Pennsylvania, and
> although there is a separate so-called TUA for each store,
> the parties' conduct demonstrates that their arrangement
> actually constituted one unified multi-state franchise
> agreement.
>
> 38.  For example, not only does Crest utilize a single
> warehouse in Dayton, New Jersey to supply all eleven of its
> Ashley HomeStores, but Ashley actually requires that
> Crest's HomeStores located in Pennsylvania be serviced from
> the warehouse in New Jersey.
>
> 39.  When Crest orders furniture from Ashley, it does
> so by utilizing a single "purchase order" directing the
> furniture to be delivered to its Dayton, New Jersey
> warehouse.  Significantly, while Crest's purchase order
> shows which merchandise is going to Crest's Value City
> stores and which merchandise is going to Crest's Ashley
> HomeStores, the purchase order does not indicate which
> Ashley HomeStore the furniture is going to, or even which
> county, region or state the HomeStore is located in, nor
> does Ashley have any idea as to which HomeStore any of the
> furniture is going.  The purchase order, as it pertains to
> Ashley HomeStores, is thus a single unified document that
> does not differentiate at all between the New Jersey stores
> and the Pennsylvania stores.
>
> 40.  Sometimes Crest orders furniture from Ashley
> through a "stock order," which would be used for an item
> that Crest wants to keep in stock in its Dayton, New Jersey
> warehouse.  When utilizing a stock order (e.g., for 100
> sofas), there is no indication as to which particular store
> the furniture is ultimately going to.  Again, there is no
> distinction between furniture going to a New Jersey Ashley

HomeStore and furniture going to a Pennsylvania Ashley
HomeStore.

41.   When Todd Wanek, Ashley's President and one of
its two principal owners, discussed Crest's HomeStore
business in December 2017, he expressly treated the
Southern New Jersey and Eastern Pem1sylvania market as a
single consolidated market.

42.   Consistent with this "bundling" approach to the
stores regardless of where they are located, Ashley also
lumped together documents for both New Jersey and
Pennsylvania stores when their TUAs came up for renewal.

43.   Ashley also regularly lumped together all of
Crest's Ashley HomeStores, New Jersey and Pennsylvania
alike, within its required "boilerplate" agreements with
Crest.  For example, each time a so-called TUA covering an
Ashley HomeStore "expires," Ashley requires that Crest
execute a so-called "Release Agreement" as a condition to
renewing or re-executing a "new" TUA.  The Release
Agreement purports to provide Ashley with a general release
of all claims that Crest has or may have against Ashley as
up to the date of the Release Agreement.  Even though on
its face the Release Agreement purports to relate to one
Ashley HomeStore, its "Recitals" section expressly states
its applicability to all of Crest's Ashley HomeStores, and
the scope of the Release similarly covers all Ashley
HomeStores, [in] New Jersey and Pennsylvania.

(Docket No. 1-1 at 13-15.)

In their NJFPA count, Plaintiffs conclude that "the

parties' course of conduct and undisputed facts show that the

parties' arrangement, although involving separate so-called TUAs

for each store, is in reality one unified multi-state franchise

agreement," and "[t]here was no good cause for terminating the

four Ashley HomeStores, and Ashley never alleged that it had

good cause."  (Id. at 22.)

In their motion to dismiss, Defendants point out that in

12

order to maintain a cause of action under the NJFPA, a plaintiff must "establish or maintain a place of business within the State of New Jersey." N.J.S.A. 56:10-4(a). Defendants further point out that the NJFPA defines "place of business" as "a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services," and that "place of business" does not mean "an office, a warehouse, a place of storage." N.J.S.A. 56:10-3(f). Defendants argue that the four terminated TUAs concern "places of business" in Pennsylvania, and therefore the NJFPA does not apply. Defendants further argue that Crest's warehouse in Dayton, New Jersey, from which Crest supplies furniture to the Pennsylvania stores, fails to constitute that requisite "place of business" under the NJFPA to support its NJFPA count.

Defendants additionally argue that a comparison of the TUAs for the stores in Pennsylvania with the stores in New Jersey cast doubt on Plaintiffs' unified franchise theory. The New Jersey TUAs have an addendum which provides, "[i]f this Agreement contains any provision that conflicts with the [NJFPA] then the NJFPA 'shall control.'"[4] (Docket No. 1-1 at 22.)

---

[4] Plaintiffs allege that the New Jersey TUAs implicitly violate the NJFPA because they do not require good cause to terminate. (Docket No. 1-1 at 22.)

Defendants argue that this demonstrates the intent of the parties for each TUA to be considered individually rather than in a unified fashion.[5]

Finally, Defendants argue that the multi-state unified franchise theory is without support in the law, as only one, non-precedential case has blessed a multi-state franchise argument to maintain a claim for the violation of the NJFPA.[6]

---

[5] It appears that Defendants' position - that the NJFPA is only applicable to the TUAs governing HomeStores in New Jersey because each TUA is a stand-alone franchise - creates a two-track process for disputes arising from the non-renewal of a TUA.  The TUAs at issue here are substantively identical, except for the NJFPA addendum for the stores located in New Jersey. Thus, under Defendants' theory, a dispute that arises for a Pennsylvania location must be resolved in Wisconsin state court, presumably under either Wisconsin or Pennsylvania law, while a dispute concerning a New Jersey location must be adjudicated within the parameters of the NJFPA, and mostly likely brought in a New Jersey court.  If an entity has a TUA for a Pennsylvania location and a TUA for a New Jersey location, and an identical dispute arises regarding both TUAs, it appears that Defendants and their franchisee will be required to litigate the same issue at the same time in two different courts applying two different states' laws, potentially resulting in inconsistent outcomes. The Court, however, offers no opinion on the merit of this two-track process at this time.

[6] In Goldwell of New Jersey, Inc. v. KPSS, Inc., 622 F. Supp. 2d 168, 187 (D.N.J. 2009), the parties formulated a multistate distributorship relationship through multiple, independent contracts (RBAs), and not under one agreement.  The franchisee argued that the NJFPA may be applied extra-territorially, and that in practice, the parties understood and treated the RBAs as one omnibus franchise agreement, thus subjecting the out-of-state RBAs to the NJFPA.  The franchisor argued that the agreements must be analyzed independently of each other, thus removing the North Carolina and Multi-State RBAs from the purview of the NJFPA.  The court denied the franchisor's motion for summary judgment, finding that "the New Jersey Legislature

Defendants' arguments are premature at this stage in the
case.  Simply put, Plaintiffs plead that they operate one Ashely
franchise from their Dayton, New Jersey headquarters which
services six HomeStores in New Jersey and five HomeStores in
Pennsylvania without distinction, other than the physical
location of each store.  Although Defendants contend that the
Dayton, New Jersey location is simply a warehouse and not a
covered "place of business" under the NJFPA, that it was the
intention of the parties that each TUA effectively constituted
its own franchise based on the location of the HomeStore that
the TUA covered, and only one case has discussed a similar
unified multi-state franchise theory,[7] all of these arguments are
directed to the substance of Plaintiffs' claims rather than what
Plaintiffs have pleaded in their complaint and whether

likely would have intended the NJFPA to apply to franchises
which disclaimed connection to New Jersey franchises in the
contract, but where the parties nevertheless acted as if the
multiple franchises constituted one umbrella agreement."
Goldwell, 622 F. Supp. 2d at 168.  The court further declined
"to rule as a matter of law on the RBAs' independence provisions
when a reasonable observer could conclude that the parties
disregarded them in fact.  Because the New Jersey RBA required
[the franchisee] to establish a place of business in this state
and the evidence heretofore adduced permits the inference that a
single multi-state agreement existed, the Court will not grant
[the franchisor's] motion [for summary judgment] as to NJFPA
applicability to the non-New Jersey RBAs."  Id.

[7] As noted, supra note 6, Goldwell did not reject as a matter of
law a unified multi-state franchise theory, and Defendants have
not pointed to any case that has.  A theory is not invalid just
because only one other party has previously advanced it.

15

Plaintiffs' claims are plausible, which is the Court's focus at this stage in the case.

Moreover, Plaintiffs' claims are broader than as cast by Defendants.  Plaintiffs' claims not only challenge the non-renewal of the four TUAs, they also claim a plot between Ashley and a Crest competitor to force Crest out of business altogether in both Pennsylvania and New Jersey.  Plaintiffs claim that Ashley not renewing the four Pennsylvania TUAs has the same effect as if Ashely failed to renew all of the TUAs - namely, to eliminate Crest's Ashely HomeStore franchise as a whole.  The interplay between Ashley's termination of the four TUAs covering HomeStores in Pennsylvania and Ashley's intentions for doing so cannot be determined on a motion to dismiss.  Indeed, the course of conduct of the parties is paramount to both parties' arguments, and such disputes over each other's conduct are issues that can only be resolved in a different procedural posture.

The Court finds that Plaintiffs have alleged sufficient facts that they operate a New Jersey-based, unified multi-state franchise to which the NJFPA is applicable, and that through the non-renewal of four TUAs Defendants have terminated, in part and effectively in whole, their franchise without good cause. Plaintiffs' allegations when accepted as true present a plausible NJFPA violation claim.  Consequently, Defendants'

motion to dismiss Plaintiffs' NJFPA count will be denied.

> **2.    *Plaintiffs' common law franchise rights claim (Count Two)***

Defendants argue that because the NJFPA does not apply extraterritorially to the Pennsylvania TUAs (Defendants' first argument set forth above), New Jersey common law also cannot be applied in that way.  Because the Court has rejected Defendants' first argument at this motion to dismiss stage, Defendants' corresponding argument as to the application of New Jersey common law regarding franchise rights also fails at this stage.[8] Plaintiffs' common law franchise rights claim may proceed.[9]

---

[8] All of Plaintiffs' claims premised on the common law do not specifically refer to New Jersey common law.  Defendants argue in a footnote that Pennsylvania law should apply to Plaintiffs' common law claims because the subject of the TUAs, and the place of performance under the TUAs, is Pennsylvania.  Defendants nonetheless refer to New Jersey common law, and note that no conflict of law exist between New Jersey and Pennsylvania for Plaintiffs' common law claims.  (Docket No. 7-1 at 37-38 n.7.) For the purposes of resolving Defendants' motion to dismiss, and because (1) the law to be applied to Plaintiffs' claims going forward is dependent on a fuller record, and (2) both sides have briefed their positions on the sufficiency of Plaintiffs' common law claims under New Jersey law, the Court will analyze Plaintiffs' claims under New Jersey law.

[9] Defendants note that the continued viability of New Jersey's common law franchise rights doctrine is questionable.  Because, however, Defendants did not move to dismiss Plaintiffs' count on the basis that common law franchise rights no longer exist after the enactment of the NJFPA, the Court will not address that issue here.

### 3.   *Plaintiffs' equitable estoppel claim (Count Three)*

Equitable estoppel applies when "conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." D'Agostino v. Maldonado, 78 A.3d 527, 546 (N.J. 2013) (citations and quotations omitted).   The elements to prove an equitable estoppel claim are "a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment."   Id. (citation and quotations omitted). "Equitable estoppel is based on the principles of fairness and justice."   Id. (citation omitted).

Plaintiffs allege:

75. Throughout the fifteen-year relationship between Ashley and Crest, Ashley has consistently encouraged - and pressured - Crest to (i) open more Ashley HomeStores; (ii) expend huge sums of money to upgrade its Ashley HomeStores; and (iii) greatly expand the size of its offices and warehouse facilities to handle the increased volume of business. Crest has had to hire numerous additional employees as a result of this expansion.

76. Ashley's conduct in this regard has continued virtually nonstop right up until its sudden termination letter of November 13, 2019. As stated above, as recently as December 2017, Ashley's President and Chief Executive Officer actively encouraged Crest to open more Ashley HomeStores. And even in the year 2019, Crest opened two additional Ashley HomeStores, one on November 5, 2019, only a few days prior to Crest's receipt of the November 13, 2019 termination letter.

18

77. Ashley's conduct reasonably misled Crest to believe that its relationship with Ashley would not only continue, but would actually expand. Crest, in good faith, thus reasonably relied on Ashley's conduct since at least December 2017, and probably earlier, by opening more HomeStores, spending large sums to upgrade its HomeStores, greatly expanding its offices and warehouse facilities, and adding many new employees. Crest would not have taken these steps were it not for the specific conduct of Ashley that reasonably led Crest to believe that such steps were in its best interest. Ashley knew or should have known that its conduct would reasonably lead Crest to change its position dramatically and to extend itself economically, and Ashley's failure to advise Crest of its true intentions, when it had a duty to do so, was inexcusable.

78. Under the doctrine of equitable estoppel, which is based on principles of fairness and justice, Ashley should be precluded based on its conduct from terminating any of its agreements with Crest.

(Docket No. 1-1 at 24-25.)

Defendants have moved to dismiss Plaintiffs' equitable estoppel count by contending that Plaintiffs cannot plausibly allege that the alleged statements and conduct by Ashley's executives reasonably misled Plaintiffs to their detriment. To the contrary, however, that is exactly what Plaintiffs have alleged. Accepting those allegations as true, Plaintiffs have stated a viable equitable estoppel claim.

Defendants also argue that "the case law is clear that a franchisee is precluded from raising estoppel as grounds for renewal in the absence of a contractual provision granting renewal" when there are fully integrated contracts, like the TUAs at issue here. (Docket No. 7-1 at 46.) The "clear"

19

caselaw cited by Defendants is from the Sixth and Seventh
Circuits and Ohio state court.  Without any controlling or
persuasive law from or within the Third Circuit or from the New
Jersey state courts, the Court does not find Defendants'
argument on this basis to be availing.[10]

Plaintiffs' equitable estoppel count may proceed.

### 4.  *Plaintiffs' unfair competition claim (Count Four)*

Plaintiffs assert a count for unfair competition against
Defendants, claiming the following in addition to the
allegations in the body of their complaint:

> 81. [B]eginning almost immediately following Ashley's
> dispatch of the November 13 termination letter, Ashley has
> repeatedly pressured Crest's Mr. Kaplan to sell his Ashley
> HomeStores and/or the entire Crest business, while

---

[10] This Court recognizes that under New Jersey law, and as New
Jersey law is applied in federal court, claims based on
equitable doctrines may be precluded when a valid contract
governs the parties' relationship and resulting dispute.  See,
e.g., Hillsborough Rare Coins, LLC v. ADT LLC, 2017 WL 1731695,
at *6 (D.N.J. 2017) ("[U]nder New Jersey law, liability based on
quasi-contractual principles cannot be imposed if an express
contract exists concerning the identical matter."); but see id.
("It does not appear that either a federal or state court has
ruled on whether equitable estoppel creates a quasi-contract in
New Jersey.  The cases cited by [defendant] refer to either
promissory estoppel or unjust enrichment, but not to equitable
estoppel.").  Defendants do not make that specific argument,
however, and even if they did, the federal rules permit
alternative pleading.  See PNY Technologies, Inc. v. Salhi, 2013
WL 4039030, at *7 (D.N.J. 2013) (holding that although a party
may not recover on both theories of liability [breach of
contract and a corresponding equitable doctrine], many courts in
this district have allowed a party to assert both claims in the
alternative) (citing numerous cases).  Additionally, as the
Court has noted, Plaintiffs' claims are broader than the four-
corners of the TUAs that Ashley terminated.

simultaneously meeting with Crest's competitors to have them take over Crest's stores. It is grossly unfair for Ashley to have demanded that Crest spend substantial sums of money over the last several years to upgrade the four stores that Ashley is trying to take away from Crest, as well as its other Ashley HomeStores, while simultaneously plotting to have someone else take over the stores.

82. In the event that Mr. Ayyad or Ashley itself ever takes over the stores, they would become competitors of Crest without having had to expend large sums of money to bring the stores in compliance with Ashley's demands. This would provide them with a substantial competitive advantage over Crest.

83. Ashley's conduct in this regard constitutes unfair competition under New Jersey common law.

(Docket No. 1-1 at 26.)

The Third Circuit has explained, "New Jersey law is not precise about what constitutes unfair competition.  But while '[t]he amorphous nature of unfair competition makes for an unevenly developed and difficult area of jurisprudence,' at heart it seeks to espouse some baseline level of business fairness."  Avaya Inc., RP v. Telecom Labs, Inc., 838 F.3d 354, 386 (3d Cir. 2016) (quoting Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co., 912 F. Supp. 747, 786 (D.N.J. 1995) (interpreting New Jersey law) (citations omitted)).  "New Jersey courts have deliberately kept the standard of liability somewhat adaptable, so that it may fit changing circumstances: 'the purpose of the law regarding unfair competition is to promote higher ethical standards in the business world.  Accordingly, the concept is deemed as flexible and elastic as the evolving

21

standards of commercial morality demand.'" Id. (quoting Ryan v. Carmona Bolen Home for Funerals, 775 A.2d 92, 95 (N.J. Super. Ct. App. Div. 2001) (internal quotation marks and citations omitted)).

Defendants argue that Plaintiffs' unfair competition claim is not cognizable because it complains of conduct that has not happened, and may not happen. Defendants argue that Plaintiffs' unripe claims regarding future events must be dismissed.

A basic justiciability requirement is that each case decided by the federal courts must be a "case or controversy" - an action which by its nature is concrete and ripe. Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 350 (3d Cir. 1986). "A justiciable controversy . . . must be definite and concrete, touching upon the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-42 (1936)).

Plaintiffs' unfair competition claim contains a prophecy of what may occur if Crest's HomeStores are taken over by Ashley or their competitors, but the whole of Plaintiffs' unfair competition claim is that Defendants' past and current actions have violated the "baseline level of business fairness," and

22

Plaintiffs have been damaged as a result.  Although Plaintiffs may suffer additional damages because of Defendants' alleged "unfair" conduct, and such damages may be speculative, Plaintiffs' unfair competition claim alleges sufficient facts regarding a current concrete injury as a result of Defendants' actions.  Plaintiffs' unfair competition claim may proceed.

### 5.   *Plaintiffs' fraud claim (Count Five)*

Plaintiffs allege, "Crest doubled the size of its offices and warehouse facilities in 2005 in anticipation of adding future Ashley HomeStores," Ashley "knew of and encouraged this expansion," and since December 2017, "Ashley has demanded that Crest spend nearly $2,000,000 to upgrade its Ashley HomeStores, and even more money to open new Ashley HomeStores."  (Docket No. 1-1 at 27.)  Plaintiffs further allege that "[a]t no time prior to October 2019 did anyone from Ashley ever let Crest know that Ashley intended to terminate any of Crest's Ashley HomeStores and thereby destroy the entire unified multi-state franchise agreement that Crest had with Ashley," and "Ashley's failure to inform Crest of its intentions in this regard constituted a material omission in its dealings with Crest."  (Id.)

Plaintiffs allege that they have been substantially damaged by Defendants' concealment of their actions because they "justifiably believed that [Crest's] future relationship with Ashley would be one of growth.  Had Crest known of Ashley's

intentions, it would never have invested substantial sums of money to upgrade existing stores, hired new employees, implemented new infrastructure and opened new stores that Ashley intended to take away from it." (Id. at 28.)

Under New Jersey law, "'in its most general and fundamental conception, fraud consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith.'" Argabright v. Rheem Manufacturing Company, 201 F. Supp. 3d 578, 602 (D.N.J. 2016) (quoting Jewish Ctr. of Sussex Cty. v. Whale, 432 A.2d 521, 524 (N.J. 1981)). To prove fraudulent concealment or misrepresentation under New Jersey law, a plaintiff must establish five elements: "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" Id. (quoting Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997); Weske v. Samsung Elecs., Am., Inc., 42 F. Supp. 3d 599, 607 (D.N.J. 2014) (listing same five elements)). These factors must be pleaded with particularity under Rule 9(b) to place the defendant on notice of the precise misconduct with which it is charged. Id. (citing Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 626 (3d Cir. 1984) ("We agree, of course, that fraud, and thus

24

fraudulent concealment, must be pleaded with particularity."); Fuqua v. Bristol-Myers Squibb Co., 926 F. Supp. 2d 538, 549 (D.N.J. 2013)).

"[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" Id. (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1185 (3d Cir. 1993)).  Three categories of relationships give rise to a duty to disclose: (1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties.  Lightning Lube, 4 F.3d at 1185.

Defendants argue that Plaintiffs' fraud claim is a vague prediction of a general estimate of Crest's expected business and the continued relationship between the parties.  Defendants further argue that Plaintiffs fail to allege that they relied upon Defendants' alleged misrepresentations when they entered into the TUAs, and that any oral representations by Defendants cannot be considered based on their fully integrated contracts.

25

Defendants also contend that Plaintiffs have not pleaded that the Ashley executives knew that they were making false statements.

A comparison of the elements of a viable fraud claim and Plaintiffs' allegations shows that Plaintiffs' fraud claim is sufficiently pleaded.  Plaintiffs allege that (1) even though Defendants demanded that Crest spend millions to open new Ashley HomeStores, they misrepresented their true intentions by failing to inform Plaintiffs of their intent to take over Plaintiffs' business, (2) Defendants knew that they were concealing the truth from Plaintiffs, (3) Defendants intended for Plaintiffs to rely upon Defendants' false statements which omitted their true intention, (4) Plaintiffs relied on Defendants' less-than-forthcoming statements and invested millions of dollars into expansion and they would not have done so if Defendants had been truthful, and (5) Plaintiffs have suffered damages as a result.

Whether Plaintiffs may ultimately prove their fraud claim and show that Defendants intentionally and knowingly defrauded Plaintiffs is to be seen, but at this motion to dismiss stage, Plaintiffs have pleaded sufficient facts, when accepted as true, to maintain a plausible fraud claim.[11]

---

[11] The Court notes that the pleading requirements for fraud may be applied less strictly in the context of corporate fraud. "Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to

> ### 6.   *Kaplan's New Jersey Law Against Discrimination claim (Count Six)*

Under the NJLAD, it is unlawful discrimination "[f]or any person to refuse to . . . contract with . . . or otherwise do business with any other person on the basis of . . . age . . . of such other person or of such other person's . . . members, stockholders, directors, officers, managers, . . . agents, [or] business associates."  N.J.S.A. 10:5-12(l).  "Person" "includes one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries."  N.J.S.A. 10:5-5(a).

Kaplan alleges that Defendants violated the NJLAD because Ashley's director of store development and executive vice president both told Kaplan in October 2019 that "you're too old" to run the Crest business and that "we want you out."  Kaplan, the chairman of Crest, was 95 years old at the time.  Plaintiffs allege that "Ashley and Crest have had an extremely successful

---

successfully conceal the details of their fraud.' Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.  Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control."  Caspersen as Trustee for Samuel M.W. Caspersen Dynasty Trust v. Oring, 441 F. Supp. 3d 23, 36 (D.N.J. 2020) (quoting Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989); DiMare v. MetLife Ins. Co., 369 F. App'x 324, 330 (3d Cir. 2010)) (internal citations omitted).

business relationship for 15 years, and Crest opened two new
Ashley HomeStores in the last year alone.  Ashley's sudden
termination of its agreements with Crest was clearly based on
Mr. Kaplan's age and constituted a violation of" the NJLAD.
(Docket No. 1-1 at 29.)

Defendants argue that the NJLAD does not apply because no
alleged discriminatory conduct occurred in New Jersey.  Ashley
is located in Wisconsin and the alleged comments originated from
there,[12] and the TUAs that were terminated concerned stores in
Pennsylvania, which also constitutes the place of contracting.

The Court rejects Defendants' arguments.  Both Kaplan and
Crest are citizens of New Jersey, and the Crest business is
operated out of their Dayton, New Jersey headquarters.
Regardless from where the alleged comments about Kaplan's age
originated, Kaplan received them in New Jersey, and the effects

---

[12] In their brief, Defendants state that Ashley is located in
Wisconsin and Florida.  (Docket No. 7-1 at 37.)  Ashley's
affiliation with Florida is unclear.  Defendants' notice of
removal avers that Defendants are incorporated in Wisconsin with
their principal places of business in Wisconsin.  (Docket No. 1
at 3.)  The TUAs require "notices" with regard to the agreement
be sent to both Ashley HomeStores LTD. and AFI, which have the
same principal place of business at One Ashely Way in Arcadia,
Wisconsin.  (Docket No. 39-2 at 15.)  Also listed in the
"notices" section of one of the TUAs for the Philadelphia store
is a requirement that notices must be sent to Defendants'
general counsel in Tampa, Florida.  (Id.)  The three other TUAs
list the general counsel's address at the Arcadia, Wisconsin
location.  Ashley's connection to Florida does not preclude
Plaintiffs' NJLAD claims at this stage.

were felt by a New Jersey citizen and business.  Accordingly,
the protections of the NJLAD are available to Plaintiffs if they
can prove their NJLAD claims.  See Blakey v. Continental
Airlines, Inc., 751 A.2d 538, 555 (N.J. 2000) (explaining,
"[T]he question is whether the [NJLAD-violative conduct] was
expected or intended to cause injury in New Jersey. The fact
that the actions causing the effects in [New Jersey] were
performed outside the State did not prevent the State from
asserting jurisdiction over a cause of action arising out of
those effects." (citation and quotations omitted)).

Moreover, as discussed above, Plaintiffs' claims concern
not only the non-renewal of the TUAs for four HomeStores in
Pennsylvania, but Ashley's alleged efforts to put Crest out of
the Ashley HomeStore business altogether in New Jersey as well
as Pennsylvania.  Plaintiffs allege that these efforts were
because of Kaplan's age, which is evidenced by many prior years
of a positive and successful business relationship.  In this
broader context than simply the TUAs for four of the
Pennsylvania stores, the NJLAD is clearly applicable.

Plaintiffs' NJLAD claims may proceed, and Defendants'
motion to dismiss Plaintiffs' NJLAD count must be denied.

7. *Plaintiffs' claim for declaratory relief (Count Seven)*

Plaintiffs' complaint was originally filed in New Jersey
state court, and Plaintiffs have asserted a count for

29

declaratory judgment under N.J.S.A. 2A:16-52, which provides,
"All courts of record in this state shall, within their
respective jurisdictions, have power to declare rights, status
and other legal relations, whether or not further relief is or
could be claimed; and no action or proceeding shall be open to
objection on the ground that a declaratory judgment is
demanded."  The New Jersey Declaratory Judgment Act allows for
substantially similar relief to that provided by the federal
Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides
that a court "may declare the rights and other legal relations
of any interested party seeking such declaration." United
States Liability Insurance Company v. Singer, 2016 WL 5858984,
at *5 (D.N.J. 2016) (citations omitted).

Defendants have moved to dismiss this count on the basis
that the declaratory relief Plaintiffs seek under the NJFPA and
NJLAD fails because those claims fail.  The Court has determined
that those claims may proceed, and thus Defendants' argument to
dismiss Plaintiffs' declaratory judgment count is unavailing.

In their opposition to Defendants' motion to dismiss,
Plaintiffs ask that this Court consider their state-law based
count for declaratory judgment as now being brought pursuant to
the federal counterpart.  When, or if, the Court is required to
take any action relative to Plaintiffs' request for declaratory
relief, the Court will apply the proper procedural rule at that

30

time.  See Muhlbaier v. Specialized Loan Servicing LLC, 2018 WL
3238832, at *2 (D.N.J. 2018) (quoting Aetna Life Ins. Co. v.
Haworth, 300 U.S. 227, 240 (1937); Gasperini v. Ctr. for
Humanities, 518 U.S. 415, 427 (1996)) (other citations omitted)
("On removal, federal, not state, law applies for declaratory
judgment actions.  This is because '[t]he operation of the
Declaratory Judgment Act is procedural only,' and so '[u]nder
the Erie doctrine, federal courts sitting in diversity apply
state substantive law and federal procedural law.'  Accordingly,
'when a declaratory judgment action has been removed to federal
court, it is treated as though it had been filed under the
federal declaratory judgment act.'"); Kemper Ins. Co. v.
Rauscher, 807 F.2d 345 (3d Cir. 1986) ("It is settled law that,
as a procedural remedy, the federal rules respecting declaratory
judgment actions apply in diversity cases.").

    8.  *Whether AFI is a proper defendant*

    Defendants argue that Plaintiffs' claims against AFI must
be dismissed because Plaintiffs fail to allege any conduct
specific to AFI, as opposed to Ashely HomeStores, and only
Plaintiffs and Ashely are parties to the TUAs at issue.  In
response, Plaintiffs point out numerous references to AFI in the
TUAs, including that both entities share the same address at One
Ashley Way in Arcadia, Wisconsin, and they argue without
discovery to determine which entities or both were involved in

the various conduct alleged by Plaintiffs, it would be premature to dismiss AFI.

The Court will not dismiss AFI at this time.  The preamble to Plaintiffs' complaint specifies that their allegations are lodged at times collectively against both Defendants by referring to them as "Ashley."  (Docket No. 1-1 at 3.)  Even though collective pleading against defendants is generally discouraged, based on Plaintiffs' allegations, the contents of the TUAs, and the sharing of a principal place of business by both entities, the Court finds that Plaintiffs have satisfied Rule 8(a), and Rule 9(b) for Plaintiffs' fraud claim,[13] for their allegations against AFI.  The Court agrees with Plaintiffs that dismissal of AFI at this stage in the case would be premature.[14]

---

[13] See, *supra*, note 11, noting that "in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.  Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control." Caspersen, 441 F. Supp. at 36; see also Rowen Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc., 2009 WL 1085737 at *6 (D.N.J. 2009) ("[T]he failure of plaintiff to be more specific with regard to the defendants' individual conduct is not fatal to the claims at this motion to dismiss stage, since it is only the defendants themselves who possess the knowledge of the alleged bait and switch.").

[14] Cf. Modern Technologies Group, Inc. v. Bergman, 2006 WL 8457194, at *5 (D.N.J. 2006) (in the context of analyzing the plaintiff's complaint on the defendants' motion to dismiss for lack of personal jurisdiction, finding sufficient the plaintiff's allegation that "Defendant acted in a fashion that meets the test used by New Jersey courts when determining whether to pierce the corporate veil.  Given that this case

Plaintiffs may maintain their claims against both Defendants.

## CONCLUSION

For the reasons expressed above, all of Plaintiffs' counts against both Defendants may proceed.  Defendants' motion to dismiss will be denied in its entirety.  An appropriate Order will be entered.


Date:   October 30, 2020            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

remains at a pre-discovery stage, requiring more robust allegations from Plaintiff would be imprudent.  Once discovery progresses, and this Court can weigh whether Defendant was an alter ego for BTCI, Defendant is free to raise this issue again. At that time, this Court will be able to consider whether it has personal jurisdiction over Defendant.  At the present time, however, this Court is unable to do so.").